IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KATHY L. CABALLERO                                                                          PLAINTIFF

          v.                          Civil No. 2:14-cv -2207-MEF

CAROLYN COLVIN, Commissioner
Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Kathy Caballero, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 1382. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her application for SSI on April 12, 2012,[1] alleging an amended onset date of April 12, 2012, due to slipped disks, degenerative disk disease, bone spurs in ankles, bipolar disorder, a huge lump on the head, and panic attacks. Tr. 12, 31, 62-63, 117, 145, 151-152. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 66-76. An Administrative Law Judge ("ALJ") held an administrative hearing on May 21, 2013. Tr. 26-61. Plaintiff was present and represented by counsel.

---

[1] This is the Plaintiff's third application for SSI. Tr. 123, 141. In her first application, she alleged her disability began September 2003, and alleged an onset date of September 1, 2007, in her second application. The prior denials of these applications are administratively final and are not at issue in this case.

At the time of the hearing, the Plaintiff was 39 years old and possessed an eleventh grade education.  Tr. 20.  She had past relevant work ("PRW") experience as bartender, janitor, and bowling alley manager.  Tr. 130-135, 146, 161-168.

On August 25, 2012, the ALJ found Plaintiff's degenerative disk disease status post discectomy and depression to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 14-15.  After partially discrediting Plaintiff's subjective complaints, the ALJ determined she retained the residual functional capacity ("RFC") to perform light work involving only simple instructions and incidental contact with the public.  Tr. 15-16.  With the assistance of a vocational expert, he found the Plaintiff could perform work as a garment batter, agricultural produce sorter, and shipping and receiving weigher.  Tr. 21.

The Appeals Council denied the Plaintiff's request for review on August 11, 2014.  Tr. 1-6.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  ECF No. 6.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 8, 9.

**II.     Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Teague v.* Astrue, 638 F.3d 611, 614 (8th Cir. 2011).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial

evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. 20 C.F.R. § 416.920(a)(4)(v).

**III.	Discussion:**

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Although the ALJ is not required to function as the claimant's substitute counsel, he is tasked with developing a reasonably complete record**.** *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted). Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial. *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001).

The Plaintiff in the present case was involved in an automobile accident in April 2001, after which she began experiencing lower back pain. Tr. 239. An MRI of her lumbar spine conducted in April 2002 showed degenerative disk disease at the L5 level with an eccentric bulge to the left. Tr. 481-482. Her doctor prescribed physical therapy, but her physical therapist discharged for noncompliance after she missed eight appointments. Tr. 218-237. In 2003, Dr. Arthur Johnson ordered a discogram of her lumbar spine and prescribed Percocet and Flexeril. Tr. 217. He opined that he would see her back after the discogram, and that she would "likely need to have a minimally invasive TLIF [transforaminal lumbar interbody fusion] at the right at L5-S1." Tr. 217. However, the record does not contain the results of the discogram or any additional records from Dr. Johnson to indicate whether she underwent a surgical procedure. Interestingly,

though, the ALJ concluded that the Plaintiff's degenerative disk disease status post discectomy was a severe impairment.

In 2004, Dr. R. W. Ross treated the Plaintiff for "a horrendous amount of pain" in her right leg with weight bearing. Tr. 309. An examination documented an antalgic gait to the right, severe pain on bilateral straight leg raising, and loss of strength in her right great toe. Awaiting records from Dr. Johnson to substantiate the Plaintiff's report of a herniated disk, Dr. Ross prescribed Valium, Roxicodone, bedrest, and ice.

Over the next three years, the Plaintiff sought out intermittent treatment for back and lower extremity pain. In February 2007, Dr. Steve Carney noted a light limitation in the range of motion in the Plaintiff's lower extremities secondary to pain. Tr. 292. He diagnosed her with left leg and back pain and prescribed Lorcet, Soma, and Lunesta.

In May 2011, emergency room physicians prescribed Oxycodone and later Indomethacin for symptoms associated with chronic lower back pain and sciatica. Tr. 333-340. The Plaintiff was treated on approximately three separate occasions that month. From May 31, 2011, until April 3, 2012, she received monthly chronic pain management through the Roland Wellness Clinic. Tr. 427-452,454-456. Repeat examinations revealed tenderness to palpation in the lumbar region; positive straight leg raises, left greater than right; and, sitting with a tripod sign (indicative of meningeal irritation). Dr. John Friedl prescribed Oxycodone, Valium, Neurontin, Methadone, and Mobic to treat intractable lower back pain, radiculopathy, inflammation, muscle spasms, and anxiety. On April 3, 2012, the Plaintiff was discharged from the Roland Wellness Clinic for violating her pain medication contract. Tr. 427.

On May 23, 2012, Dr. Karmen Hopkins, a non-examining consultant completed an RFC assessment. Tr. 506-513. After reviewing the Plaintiff's medical records, Dr. Hopkins concluded

5

she could perform a full range of light work. Dr. Lucy Sauer affirmed this assessment on October 12, 2012. Tr. 562.

On June 28, 2012, the Plaintiff sought treatment in the emergency room for sharp, chronic back pain. Tr. 518-519. An examination revealed tenderness to palpation over the right hip rotator muscle group. The doctor diagnosed her with right hip rotator strain and sciatica.

On March 18, 2013, the Plaintiff began treatment at the Good Samaritan Clinic ("GSC") for her chronic back pain and neuropathy. Tr. 567. She reported numbness in her left thigh, proclaiming a chronic burning sensation exacerbated by touch. The doctor diagnosed peripheral neuropathy and discussed how degenerative disk disease can cause neuropathy into the thigh. [2] The following day, x-rays of her lumbar spine showed minimal spondylitic changes at the thoracolumbar junction.

On March 27, 2013, doctors at GSC treated the Plaintiff for burning in her upper left leg and lower back pain. Tr. 566. She indicated that the pain was so severe that it made her want to kill herself. The doctor assessed lower back pain with a radicular component and gave her paperwork to apply for a charity MRI. He prescribed Neurontin.

On April 1, 2013, the Plaintiff indicated that the Neurontin helped "some." Tr. 565. The doctor increased her dosage of Neurontin. On April 8, 2013, she recontacted the clinic to advise them that the increased dosage of Neurontin was helping. Tr. 525.

On May 10, 2013, the chronic burning and her left thigh and lower back pain persisted. Tr. 578. She reported worsening pain since running out of Neurontin five days earlier. An examination revealed a positive straight leg raise on the left. The doctor ordered an MRI and

---

[2] And, we note that sciatica (pain in the back that spreads to the buttocks and upper thighs) is a common early symptom of degenerative disk disease. Cedars-Sinai, *Degenerative Disk Disease*, *at* https://www.cedars-sinai.edu/Patients/Health-Conditions/Degenerative-Disc-Disease.aspx (Last accessed November 20, 2015).

increased her dosage of Neurontin.  The MRI showed some spondylitis ridging and mild anterior spurring at the T12-L1 level, mild disk desiccation at the L5-S1 level, mild degenerative facet changes in the mid-and lower lumbar spine, and minimal bulging slightly asymmetric to the left L5-S1 level.  Tr. 574, 577.

On May 29, 2013, the Plaintiff returned to GSC with continued complaints of neuropathy.  Tr. 585.  She continued to take the higher dosage of Neurontin, which was somewhat helpful.  The doctor ordered a neurology consult and advised her to continue the Neurontin.

On June 24, 2013, an EMG and nerve conduction studies of both lower extremities were normal.  Tr. 580-581.[3]

Despite the Plaintiff's request for a consultative examination, the ALJ rendered his opinion without the benefit of a neurological consult.  Instead, he relied upon the opinion of Dr. Hopkins, a non-examining consultant.  *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).  The ALJ also reached his decision without the benefit of an assessment from an examining source.  In fact, none of the treating doctors of record provided any indication as to the Plaintiff's work-related abilities or limitations.  *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace).  And, without some evidence to indicate the Plaintiff's ability to work, the record does not provide sufficient facts upon which to base an informed decision.  Accordingly, we find that remand is

---

[3] Although an EMG and nerve conduction studies were negative, this does not preclude a diagnosis of neuropathy, as these studies do not measure small fiber peripheral neuropathy.  Rossitza I. Chichkova & Lara Katzin, MD, *EMG and Nerve Conduction Studies in Clinical Practice*, Practical Neurology, Jan./Feb. 2010, at 38, *available at* http://practicalneurology.com/2010/02/emg-and-nerve-conduction-studies-in-clinical-practice/ (last accessed November 20, 2015).

necessary to allow the ALJ to obtain a neurological consultative examination, complete with an RFC assessment to determine the Plaintiff's ability to perform work-related activities.

### IV.     Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 23rd day of November, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE